**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  06-30059

BERNICE WHITE

Debtor

**MEMORANDUM ON OBJECTION TO
CONFIRMATION AND OBJECTION BY DEBTOR
TO CLAIM OF JPMORGAN CHASE BANK**

**APPEARANCES:**    RICHARD M. MAYER, ESQ.
　　　　　　　　　1111 Northshore Drive
　　　　　　　　　Suite S-570
　　　　　　　　　Knoxville, Tennessee  37919
　　　　　　　　　Attorney for Debtor

　　　　　　　　　MORRIS, SCHNEIDER & PRIOR, L.L.C.
　　　　　　　　　 Laura A. Grifka, Esq.
　　　　　　　　　 1587 Northeast Expressway
　　　　　　　　　 Atlanta, Georgia  30329
　　　　　　　　　 Attorneys for JPMorgan Chase Bank as Trustee

　　　　　　　　　GWENDOLYN M. KERNEY, ESQ.
　　　　　　　　　 Post Office Box 228
　　　　　　　　　 Knoxville, Tennessee  37901
　　　　　　　　　 Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court are the following contested matters: (1) the Objection to Confirmation of Debtor's Plan (Objection to Confirmation) filed by JPMorgan Chase Bank as Trustee (JPMorgan) on February 24, 2006; and (2) the Objection By Debtor to Claim of JPMorgan Chase Bank As Trustee (Objection to Claim) filed by the Debtor on March 27, 2006.

The facts and documents necessary for resolution of both matters are before the court through the Joint Stipulation of Undisputed Facts filed by the parties on April 18, 2006. The Debtor filed her Brief on April 12, 2006, and JPMorgan filed its Brief on May 2, 2006. The court also takes judicial notice of all documents filed in the Debtor's bankruptcy case pursuant to Rule 201 of the Federal Rules of Evidence.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) and (L) (West 1993).

I

The Debtor filed the Voluntary Petition commencing her Chapter 13 bankruptcy case on January 18, 2006.[1] Listed in the Debtor's schedules is a debt owed to Homecomings Financial in the amount of $77,000.00, secured by a Deed of Trust executed on November 21, 2003, by the Debtor and Elisa Simmons, a non-filing co-debtor, pledging as security real property located at 5911 East Sunset Road, Knoxville, Tennessee (Residence), which the Debtor values at $118,900.00.[2]

---

[1] The case was originally filed pro se; however, the Debtor has since retained counsel.

[2] The Deed of Trust contains an Adjustable Rate Rider, providing that the interest rate, which was originally 7.25%, was subject to change every six months beginning on December 1, 2005, with a 13.25% interest rate cap. *See* STIP. EX. A.

2

STIP. EX. A.  The Debtor defaulted under the terms of the Deed of Trust, and JPMorgan began foreclosure proceedings.  The foreclosure sale, which was scheduled for January 19, 2006, was stayed by the Debtor's bankruptcy filing.

The Debtor's Chapter 13 Plan (Plan) filed on January 31, 2006, proposes monthly payments of $750.00 for 60 months, plus all tax refunds in excess of $500.00, with a projected 100% dividend to unsecured creditors.  With respect to the Residence, the Debtor provides for maintenance payments of $539.00 to be paid by the Chapter 13 Trustee on JPMorgan's secured claim.  The Plan also proposes to cure a $6,000.00 arrearage owing JPMorgan through monthly installments of $100.00.

On February 13, 2006, JPMorgan filed two Proofs of Claim, the first in the amount of $76,317.20, representing the principal balance owed by the Debtor, and the second in the amount of $9,583.39, representing a prepetition arrearage.  The arrearage claim also states that the "Monthly Post-Petition Mortgage Payment Commence[s] April 1, 2006 @ $813.40."

JPMorgan filed its Objection to Confirmation on February 24, 2006, stating that the Plan does not comply with the provisions of 11 U.S.C. § 1325(a) (2005), as it (1) was not, as required by §1325(a)(3), proposed in good faith; (2) incorrectly provides for a $6,000.00 arrearage, thereby failing to cure the default as required by 11 U.S.C. § 1322(b)(5) (2005); and (3) does not provide for a monthly maintenance payment of $813.40, consisting of principal and interest in the amount of $689.07 and escrow of $124.33.  On March 27, 2006, the Debtor filed an Objection to Claim, averring that the correct monthly maintenance payment she should be required to make is $629.00, and because she pays her property taxes and homeowner's insurance, it is not necessary for an

3

escrow payment to be included in the monthly maintenance payments to be made by the Chapter 13 Trustee to JPMorgan.[3]

**II**

JPMorgan objects to confirmation of the Plan primarily because it does not propose proper treatment with respect to the arrearage claim. The Debtor has proposed to cure an arrearage in the amount of $6,000.00 through monthly installments of $100.00 over the sixty month life of the Plan. However, JPMorgan has filed an arrearage claim in the amount of $9,583.39, which includes the following: (1) four payments of $529.37 totaling $2,117.48 due for September 2005 through December 2005; (2) two payments of $689.07 totaling $1,378.14 due for January and February 2006; (3) one payment of $813.40 due for March 2006; (4) appraisal fees of $95.00; (5) escrow advances of $2,800.85; (6) attorneys' fees and costs for the foreclosure of $1,896.17; (7) accrued late charges of $132.35; and (8) post-petition attorneys' fees for bankruptcy representation in the amount of $350.00.

Pursuant to 11 U.S.C. § 1322(b)(2) (2005), the Debtor's Plan may not modify the rights of her mortgage holder, JPMorgan, as set forth in the Deed of Trust; however, the Plan may "provide for the curing of any default within a reasonable time and maintenance payments . . . on any secured claim on which the last payment is due after the date on which the final payment under the plan is due" 11 U.S.C. § 1322(b)(5). *See In re Rathe*, 114 B.R. 253, 257 (Bankr. D. Idaho 1990) ("The purpose of a Chapter 13 plan is to allow a debtor to pay arrearages during the pendency of the plan

---

[3] On March 3, 2006, the Chapter 13 Trustee filed an Objection to Confirmation based upon feasibility which is directly related to the issues raised herein. Its resolution depends upon the outcome of the matters presently before the court.

4

while continuing to make payments at the contract rate."). This is accomplished by "essentially split[ting the] secured claims into two separate claims — the underlying debt and the arrearages." *Rake v. Wade*, 113 S. Ct. 2187, 2192 (1993). And, once the arrearage is cured, the Debtor's account should be restored to "pre-default status." *In re Wines*, 239 B.R. 703, 707 (Bankr. D.N.J. 1999).

> Cure plans do not "permanently deprive" a claimant of their entitlements under the mortgage instrument. Rather, confirmation of the plan remedies its default status as of the completion of the plan. *In re Brown*, 121 B.R. 768, 771 (Bankr. S.D. Ohio 1990). "When a default on a mortgage or other long term debt is cured under section 1322(b)(5), the full amount of the creditor's claim is not paid during the chapter 13 cases. Rather, the debtor preserves the benefit of a longer payment schedule which extends beyond the due date of the last payment under the plan, and the creditor is protected by the exception to discharge for long term debts on which defaults are cured." [COLLIER ON BANKRUPTCY ¶] 1322.09[4] (1998). Cure of the default will not otherwise alter the creditor's rights under the mortgage document. To further support this conclusion, the parties need only look to 11 U.S.C. § 1328(a)(1) which specifies that the chapter 13 discharge does not reach "those debts which the debtor wishes to continue treating as long-term debts." *In re Smith*, 8 B.R. 543, 547 (Bankr. D. Utah 1981).

*McCalla v. Nationsbanc Mortgage Corp. (In re McCalla)*, 238 B.R. 94, 95-96 (Bankr. M.D. Pa. 1999). In sum, if the amount of JPMorgan's arrearage claim is correct, then the Plan, as currently proposed, cannot be confirmed, as the proposed $100.00 per month payment will not cure the Debtor's default within the 60-month life of the Plan.

"A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim," FED. R. BANKR. P. 3001(f), and is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a) (2005). A debtor objecting to a creditor's proof of claim

> . . . bears the burden of going forward and presenting evidence to rebut or cast doubt upon, the creditor's proof of claim. The Debtor's burden is to produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one

> or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim . . . by a preponderance of the evidence.

*In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999) (quoting *Galloway v. Long Beach Mortgage Co. (In re Galloway)*, 220 B.R. 236, 243-44 (Bankr. E.D. Pa. 1998); *see also Namer v. Sentinel Trust Co. (In re AVN Corp.)*, 248 B.R. 540, 547 (Bankr. W.D. Tenn. 2000). JPMorgan timely filed both its maintenance and arrearage proofs of claim on February 13, 2006, in the amounts of $76,317.20 and $9,583.39, respectively. In its arrearage claim, JPMorgan also set forth a post-petition ongoing monthly maintenance payment of $813.40, to which the Debtor has objected on the basis that she is paying property taxes and insurance, so it is not necessary for JPMorgan to collect and maintain an escrow account for the Debtor's mortgage. The Debtor does not, however, challenge the validity of the arrearage claim amount.

Both parties focus on the amount of the post-petition maintenance payment as the primary area of contention. The Debtor argues that she pays her own taxes and insurance, so JPMorgan should not be entitled to monthly escrow payments. On the other side, JPMorgan argues that it is allowed to require the Debtor to pay her taxes and insurance into escrow when she did not pay them as required under the Deed of Trust.

Rights are not defined under the Bankruptcy Code, and so, "Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such 'property interests are created and defined by state law.'" *Nobelman v. Am. Sav. Bank*, 113 S. Ct. 2106, 2110 (1993) (quoting *Butner v. United States*, 99 S. Ct. 914, 917-18 (1979)).

> [T]he "rights" of a mortgagee referred to in § 1322(b)(2) are those "reflected in the relevant mortgage instruments which are enforceable under [state] law."

6

> [*Nobelman,* 113 S. Ct. at 2110]. In *Nobelman*, the mortgage instruments at issue were a deed of trust and a promissory note which provided for
>
>> the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.
>
> [113 S. Ct. at 2110]. The *Nobelman* Court held that "these are the rights that were 'bargained for by the mortgagor and the mortgagee,' and are rights protected from modification by § 1322(b)(2)." [ 113 S. Ct. at 2110 ]  (quoting *Dewsnup v. Timm*, 502 U.S. 410, 417, 116 L. Ed. 2d 903, 112 S. Ct. 773 (1992)).

*In re McMillan*, 251 B.R. 484, 487 (Bankr. E.D. Mich. 2000).

Under Tennessee law, the terms of a deed of trust are binding upon the parties who executed it. *See CC Holdings v. Tenn. Gas Transp., Inc. (In re Tenn. Gas Transp., Inc.)*, 169 B.R. 643, 644 (Bankr. M.D. Tenn. 1994). The Deed of Trust, executed by the Debtor and Ms. Simmons on November 21, 2003, requires payment of taxes and insurance and states, in material part, the following with respect to escrow and JPMorgan's rights:

> 3.  **Funds for Escrow Items**. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; . . . (c) premiums for any and all insurance required by Lender under [this Deed of Trust.] . . . These items are called "Escrow Items." . . . Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender, and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. . . . If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount

and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

. . . .

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . .), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . [.] Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . [.]

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

DEED OF TRUST at 4-7.

Under the terms of the Deed of Trust, the Debtor is required to pay her property taxes and insurance to JPMorgan in escrow unless JPMorgan waives that obligation. In fact, pursuant to paragraph 9 of the Deed of Trust, the Debtor's filing for bankruptcy alone was enough to trigger JPMorgan's demand for creation of an escrow account. Simply stated, the Debtor is bound by the terms of the Deed of Trust, and she must pay the taxes and insurance associated with the Residence through escrow. For this reason, the Debtor's Objection to Claim shall be overruled.

## III

In summary, the Objection to Confirmation filed by JPMorgan will be sustained, and confirmation of the Debtor's Chapter 13 Plan filed on January 31, 2006, will be denied. The $6,000.00 arrearage amount listed in the Plan falls short $3,583.39 of JPMorgan's actual arrearage claim of $9,583.39. Additionally, because the Debtor has not provided for the payment of insurance and property taxes through an escrow account, the Debtor's Objection to Claim shall be overruled.

To provide the Debtor an opportunity to cure the deficiencies in her Plan as identified in this Memorandum, the court will allow the Debtor ten (10) days in which to file an amended Schedule J, reflecting the reduction in expenses for insurance and property taxes, as well as an amended Chapter 13 plan, reflecting the corrected maintenance payment and the corrected arrearage amount.

An order consistent with this Memorandum will be entered.

FILED: May 16, 2006

                                    BY THE COURT

                                    */s/  RICHARD STAIR, JR.*

                                    RICHARD STAIR, JR.
                                    UNITED STATES BANKRUPTCY JUDGE